# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

THOMAS, HEAD, AND GREISEN
EMPLOYEES TRUST; RONALD E.
GREISEN; and HENRY P. HEAD,

        Plaintiffs,

    vs.

JACK B. BUSTER; TERRY D.
PARKS and NORTHERN
FINANCIAL,

        Defendants.

_____

THOMAS, HEAD AND GREISEN
EMPLOYEES TRUST; RONALD E.
GREISEN; and HENRY P. HEAD,

        Plaintiffs,

    vs.

JACK B. BUSTER; JANICE SUE
BUSTER, a/k/a JANICE SUE
JOHNSON; HORIZONS WEST, INC.,
an Oregon corporation; DAVID J.
BERG; MARJORIE A. BERG; CARL
L. CASEY; SCORPIO, INC., an
Alaska corporation; WESTERN
INVESTMENT TRUST; and SUSAN
BENEDICT, Trustee of the Western
Investment Trust,

        Defendants,
and

WESTWOOD ACRES, an Alaska
Limited Partnership,

        Intervenor.

3:89-cv-00071-JKS-JDR

**RECOMMENDATION**
**REGARDING**
**MOTION FOR DISBURSEMENT**
**OF FUNDS**

(Docket No. 768)

Plaintiffs filed a *Motion for Order Authorizing Distribution of Westwood Acres Funds to the Partners of Westwood Acres* at Docket 768. Along with the Motion, Plaintiff filed twelve (12) exhibits which encompassed reports to the Court from the receiver, Charles H. Rigden, CPA, and various relevant pleadings. None of the named Defendants nor the named Intervenor filed responses to the Motion. The matter was referred to the Magistrate Judge for a recommendation.[1] For the reasons stated below, the Magistrate Judge HEREBY RECOMMENDS the Court GRANT Plaintiff's Motion to distribute the funds and dissolve the receivership.

## I.  Factual Background

This case began in 1989. There are 778 pleadings on file and decades of tedious history. As there is no comprehensive factual record in any one of the previous pleadings, the Magistrate Judge finds it necessary to make a thorough record of the facts here. The pleadings which are highlighted in this Recommendation are not a reflection of the entire record, but an accurate recounting of the documents and events which explain the path the case has taken.

On March 7, 1989, Plaintiffs Thomas, Head and Greisen Employees Trust (Trust), Ronald E. Greisen, and Henry P. Head (Trustees) filed the first Complaint with this Court.[2] The first Complaint alleges that the Defendants, Jack B.

---

[1]Docket 777.

[2]Docket 1.

Buster, Terry D. Parks and Northern Financial, developed a "pattern of fraudulent schemes to offer to sell, sell, and cause to be sold to the Trust certain securities."[3] Plaintiffs claimed that the Defendants misrepresented the investments and that the Plaintiffs relied on those representations when investing in securities.[4]  The Trust consists of an employee pension benefit plan trust "organized for the benefit of the employees of Thomas, Head and Greisen, a professional corporation."[5]  The named Plaintiffs, Mr. Head and Mr. Greisen, are the Trustees for the employee Trust.  The named Defendants, are partners of and associated with Northern Financial.[6]

At Docket 6, on May 30, 1989, Defendant Jack Buster filed his Answer to the Complaint.[7]  Therein Mr. Buster outlined his affirmative defenses.[8]  Mr. Buster then filed an Amended Answer at Docket 16.[9]

On November 13, 1991, Plaintiff filed an *Amended Complaint*.[10]  The Amended Complaint differed from the Complaint in that the Amended document

---

[3]*Id.* at 1.

[4]*Id.*

[5]*Id.* at 2.

[6]*Id.*

[7]*Answer to Complaint*.

[8]*Id.* at pp. 2-3.

[9]*Amended Answer to Complaint*.

[10]Docket 80.

added paragraph 14 which noted that "the legal interest for the claim of the trust against defendants was assigned to Ronald E. Greisen and Henry P. Head, individually."[11] The Amended Complaint also added Count Eight, Misrepresentation, stating that the conduct of the defendants constituted misrepresentation for which the plaintiffs were entitled to damages. This addition is also noted in the prayer for relief where a request for damages, plus interest, was made as to count eight.[12]

Following the *Amended Complaint*, the three defendants filed an *Amended Answer to Complaint* at Docket 81. The Defendants noted that the RICO allegations contained in the Amended Complaint were addressed in the Court's previous summary judgment order which dismissed the claims. The Defendants also outlined 28 affirmative defenses. A separate Amended Answer was filed at Docket 101 on behalf of Jack Buster and Terry Parks. That Answer contained 21 affirmative defenses.[13]

### A. Findings of Fact Following July 1992 Trial

The Court, following a trial, entered findings of fact and conclusions of law on July 30, 1992.[14] Therein, the Court made findings regarding the fraudulent dealings of the Defendants and the details of the financial arrangements between

---

[11]*Id.* at 3.

[12]*Id.* at 15, 16.

[13]*Amended Answer to Complaint*, Docket 101.

[14]*Findings of Fact and Conclusions of Law*, Docket 136.

the Plaintiff Trust and the Defendants. For the benefit of the Court and the record, the Magistrate Judge summarizes those findings here.

From 1997 until 1983 Jack Buster dealt with Ronald Greisen in order to sell him deed of trust notes. From 1987 to 1990, Jack Buster was a general partner and the Trust was a limited partner in the Kavik Mortgage Investors, a company which invested in deed of trust notes. In 1983, Jack Buster and Terry Parks created Northern Financial. Each being equal general partners. Northern Financial then proceeded to deal with the Trust from 1983 to 1987. During the times of the Defendants' dealings with the Trust, Ronald Greisen and Henry Head were trustees of the Trust. The Court identified that Head and Greisen were both investors who were knowledgeable in deed of trust notes.[15]

The Thomas, Head & Greisen Employee Trust upon which this lawsuit was based, is the "successor entity of two separate trusts created for the benefit of the employees" of the company.[16] The previous two trusts were merged together in 1980.[17]

The Court made findings as to each of the following notes: (1) the Falkenstein Note; (2) the Kern Note; (3) the Bergin Note; and, (4) the Smith Note.

---

[15] *Id.* at 2.

[16] *Id.*

[17] *Id.*

## I. Falkenstein Note

Regarding the Falkenstein Note, the parties stipulated to some facts. They agreed that the on May 1, 1984, Steven L. Falkenstein executed a promissory note with Lawrence Cornett III with the original principal balance on the note in the amount of $29,000, bearing interest at a rate of 10 percent per annum. The note was secured with a deed of trust on a parcel of land located approximately 25 miles from Glennallen, Alaska and described in the deed of trust as the:

> Northeast one-quarter of the Southwest one-quarter of the Northeast one-quarter of the Southwest one-quarter (NE1/4 SW1/4 NE1/4 SW1/4) of Section 11, Township 1 South, Range 1 East, Copper River Meridian, in the Chitna Recording District, Third Judicial District, State of Alaska.[18]

On February 6, 1986, Northern Financial purchased the note from Lawrence Cornett, III for $17,158.53. The Trust then purchased the note for $21,700 on March 7, 1986. When the Trust purchased the note, payments were current and the note had a principal balance of $27,803.19.[19]

In addition to the stipulated facts, the Court made findings relating to the Falkenstien note. Importantly, the Court found that the Defendant Terry Parks made material representations to Mr. Greisen that Greisen then relied upon when purchasing the note.[20] False representations included misinformation regarding

---

[18] *Id.* at 3.

[19] *Id.*

[20] *Id.* at 3-4.

where the payor grew up, the payor's employment, the payor's marital status, the employment history of the payor's former wive, the payor's assets, the actual size of the acreage, the purchase price of the property, improvements on the property, and a misrepresentation that the payor had made a down payment on the property.[21]

The Court also found that the last monthly payment on the Falkenstein note came on February 24, 1987.[22] The Court made a finding that the Trust's reliance on Defendant's representations resulted in a breach of fiduciary duty and a financial loss of $25,219.21 in interest.[23] The Court further found that the Plaintiffs made reasonable efforts to mitigate their damages.[24]

### ii.    Kern Note

With respect to the Kern note, the parties stipulated that on June 18, 1985, Frederick L. Kern executed a promissory note between himself and Billie Poole, Jr. and Bernice Sue Poole.[25] The principal balance was originally $49,500 and bore interest at a rate of 12 percent per annum. This note was secured with a deed of trust on a parcel of real property described as "in the end of the Rainbow

---

[21] *Id.* at 4.

[22] *Id.*

[23] *Id.* at 5.

[24] *Id.*

[25] *Id.*

subdivision in Wasilla."[26]  On April 24, 1986, Northern Financial purchased the note

for the amount of $30,100.00 and then on April 28, 1986 Defendants offered to sell

the note to the Trust.  The Trust purchased the note for $36,250.00.  At the time the

Trust purchased the note, payments were current and the note had a principal

balance of $44,714.07.[27]

The Court found that the Defendants made material misrepresentations

to the Trust regarding the note and the Pooles.  These representations included

false information about the payor's employment, the payor's spouse's employment,

the payor's marriage, and whether the house had been inspected and found to be

complete.  The Court found that the representations were material to the Trust's

decision to purchase the note and that the Trust relied on the representations of the

defendants.[28]

The Trust sold the property which secured the Kern note on

October 1, 1991 and the Court found the Trust took reasonable steps to mitigate

damages prior to the sale.  The Court found the Trust suffered "a loss and sustained

damages as a result of defendant Northern Financial's breach of fiduciary duty,

including interest  to June 8, 1992, in the amount of $50,189.55."[29]

---

[26] *Id.*

[27] *Id.*

[28] *Id.* at 5-6.

[29] *Id.* at 6.

### iii.    Bergin Note

The parties stipulated that on June 25, 1982 John L. Bergin and Judy M. Bergin executed a promissory note between themselves and William M. Schofield and Ruth M. Schofield (the Bergin's as payors; the Schofield's as payees).  The initial principal balance on the note was $56,843.38, bearing 10% interest per annum.  The note was secured by a deed of trust on real property located in the Woodland Park subdivision in the Spenard neighborhood in Anchorage.  Northern Financial purchased the note from the Schofield's and then on April 18, 1986 offered to sell the note to the Trust.  On April 29, 1986, the Trust purchased the Bergin note for $35,150.00.  Payments were current on the note a the time of the purchase and the principal balance was $50,965.47.[30]

The final payment on the property was made on February 25, 1988 and brought the interest to current status.  The principal balance owing at the time of default was $46,377.65 plus 10% interest per annum from February 25, 1988.[31]

On April 18 of the same year, the Trust retained Jack Clerk to file a lawsuit regarding the promissory note.  Then, on June 20, 1988, the State of Alaska initiated nonjudicial foreclosure as the $51,027.19 on the first deed of trust was delinquent.[32]  The Trust obtained a judgment against the Bergins on March 23, 1989

---

[30] *Id.* at 7.

[31] *Id.* at 7.

[32] *Id.* at 7-8.

in the amount of $52,219.50. The Bergins filed for Chapter 7 Bankruptcy on April 3, 1989. Following the filing, the Trust filed proof of their claim with the bankruptcy court in the amount of $52,376.87. The debtors were discharged from pre-petition obligations on July 7, 1989. The Trust spent $773.42 in attorneys' fees and paid a $22.50 escrow termination fee, totaling $795.92.[33]

Defendant Buster told the Trust the property was located east of Merrill Field in the Wonder Park subdivision in Anchorage and that the assessed value on the property was $166,000.00.[34] Despite this representation, the property was actually located in the Woodland Park subdivision in Spenard next to the railroad tracks and had an assessed value in 1986 of $143,800.00. Further, the property could not be accessed from a platted street. Instead, the only access to the property was through an alley.[35]

The Court found that the Trust relied on the representation of the defendants and that this reliance was material to the Trust's decision to purchase the Bergin note.[36] The Court further found that the Trust suffered "a loss and sustained damages as a result of defendants Northern Financial's breach of fiduciary duty,

---

[33] *Id.* at 8.

[34] *Id.* at 8.

[35] *Id.* at 7-8.

[36] *Id.* at 8.

including interest to June 8, 1992, in the amount of $67,336.95."[37]

The Court found that the Plaintiff's took reasonable steps to mitigate damages, including pursing a judgment against the payors. And, that it was not unreasonable for Plaintiff to not assume the first deed of trust (the deed held by the State) as no equity existed in the property for the second deed.[38]

### iv.    Smith Note

The parties agreed that the Trust did not suffer damage or loss on the Smith note and therefore the Court did not enter findings or awards of damages.[39]

### v.    Fiduciary Status of Defendants

In addition to findings as to each of the notes, the Court made specific findings as to the fiduciary status of the Defendants. The Court determined that the defendants rendered investment advice to the Trust regarding the value of all of the notes described above and that the Trust relied on that advice. The Defendants made recommendations regarding "the advisability of the Trust investing in the [notes] . . . by applying the investment criteria . . . and by subsequently presenting those notes to the Trust with a recommendation to purchase them."[40] The Defendants gave investment advice to the Trust that resulted in the Trust's purchase

---

[37] *Id.* at 8-9.

[38] *Id.* at 9.

[39] *Id.* at 9.

[40] *Id.* at 9.

of 61 notes over a period of nine and a half years. "In the course of Northern Financial's dealings with the Trust, the Trust invested approximately 40% of its total assets in investments recommended by [the] defendants."[41]

The Court noted that:

> Defendants understood that the trustees were relying on them to investigate and screen such notes, and to present only suitable opportunities to the Trust.
> Defendants' compensation amounted to thousands of dollars on each of the notes in question; it is unreasonable to assume that Mr. Gerisen and Mr. Head would agree to compensation in that amount unless they understood that defendants were providing a substantial service to the Trust in return.
> Mr. Buster was also a fiduciary to plaintiffs by virtue of his being a general partner, and they being limited partners, in Kavik Mortgage Investors. The court concludes that any reasonable person, when dealing with another who serves two different masters, only one of which is owed a fiduciary duty, would not proceed before ascertaining which entity he was purporting to be representing.[42]

The Defendants were paid for their investment advice. Mr. Buster was aware that the Falkenstein, Kern and Smith notes were sold to the Trust and he considered these to be unsuitable investments though Northern Financial never advised the Trust that the notes were unsuitable.[43]

In conclusion, the Court found that the defendant Northern Financial

---

[41]*Id.* at 10.

[42]*Id.* at 11.

[43]*Id.* at 11-12.

and the individual Defendants Jack B. Buster and Terry D. Parks were liable for breach of fiduciary duty (because of the general partnership between Jack Buster and Terry Parks). The Court further found that Mr. Buster owed a fiduciary duty to the Trust because of his general partnership in Kavik Mortgage Investors and the fact that the Trust was a limited partner in that venture.[44]

### vi. ERISA

Because the Defendants were fiduciaries within the meaning of 29 U.S.C. § 1002(21)(a)(2) and 29 C.F.R. § 2510.3-21, having given investment advice for a fee subject to an understanding whereby the advice given by Defendants served as the primary basis for the Trust's investment decisions for the transactions at issue in this matter, and because that advice was individualized to the Trust based on the Trust's requirements, the Defendants were subject to penalties under the law.[45] The Court found the Defendants breached

> the prudent man standard of ERISA with respect to each of the three transactions in question by failing to act with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.[46]

This breach was based on the fact that the Defendants made false

---

[44] *Id.* at 12-13.

[45] *Id.* at 13.

[46] *Id.*

statements of material fact as part of their recommendations and offers, regarding the notes, to the Trust and by failing to investigate the information they gave to the Trustees regarding "(1) the collateral on the notes and (2) the payors' ability to make payments on the notes.[47]

The defendants knew but failed to disclose that the notes were not suitable investments for the Trust. Because of this failure, the Plaintiffs were not able to mitigate the loss.[48]

### vii.   Judgment

In the findings filed at Docket 136, the Court stated that the plaintiffs were entitled to a judgment against Jack B. Buster, Terry D. Parks and Northern Financial in the amount of $142,745.71 plus costs, interest and reasonable attorneys' fees.[49]

### B.   Final Judgment Following July 1992 Trial

On August 17, 1992, the Court entered a final judgment in favor of the Plaintiffs and ordered that the Plaintiffs

shall recover from defendants Jack B. Buster, Terry D. Parks and Northern Financial jointly and severally the

---

[47] *Id.* at 13-14; Among the specific details which the Defendants failed to communicate was the fact that access to the Bergin property was only through an alley, that there was no access from a platted street and that the property was in Spenard and not near Merrill Field.

[48] *Id.* at 14.

[49] *Id.*

principal amount of $142,745.71 plus prejudgment interest from June 8, 1992 to August 17, 1992 in the amount of $1334.19, attorney fees to be later awarded by the court upon proper motion and supporting data, and costs in the amount of $2,064.85 for a total judgment of $190,057.64.[50]

The judgment was also determined to bear interest at the rate of 3.51% per annum from the date of the judgement until it was paid in full.[51]

<u>C.  Matters Relating to the Enforcement of the 1992 Judgment</u>

On September 2, 1992, the Court entered a *Restraining Order an Order for Judgment Debtor to Appear.*[52]  The restraining order stated that Terry Parks was "forbidden from selling, transferring, or in any manner disposing of his assets not exempt from execution, pending the [scheduled Debtor exam] proceedings."[53]  A similar order was entered on September 2, 1992 with regards to Jack. B Buster and Scorpio, Inc.[54]

The same day, Plaintiff filed a *Motion for Order Charging Defendants' Partnership Interests* wherein Plaintiffs asked for the Court to order entities for which Jack Buster receives dividends or payments to make those payments to the Plaintiff

---

[50]*Final Judgment*, Docket 139, p. 1.

[51]*Id.* at 2.

[52]Docket 162.

[53]*Id.* at 3.

[54]*Restraining Order and Order for Judgment Debtor to Appear*, Docket 163.

in order to satisfy the judgment.[55]  Defendants partially opposed the motion in a filing

at Docket 177 and Plaintiff filed a Reply at Docket 191.[56]

On September 16, 1992, Jack Buster gave notice to the Court that he

was appealing the final judgment entered on August 17, 1992 and the Court's order

of August 31, 1992 which denied his request for a new trial or, in the alternative, to

open the judgment in order to amend findings of fact and conclusions of law.[57]  Terry

Parks filed a nearly identical Notice the same day.[58]  In November of 1992, Mr. Parks

filed a *Stipulation* stating his compliance with the writs of execution and withdrawing

his appeal to the Ninth Circuit.  He further agreed that the Court should immediately

rule on Plaintiff's motion for costs and fees.[59]

Following the filing of his appeal, Mr. Buster filed for Chapter 13

Bankruptcy in October of 1992.  The petition stayed all proceedings in this matter as

to Mr. Buster, including pending motions.[60]  The petition followed the efforts of the

Plaintiffs to gather information about Mr. Buster's finances and gather funds from

---

[55]*Motion for Order Charging Defendants' Partnership Interests*, Docket 165.

[56]*Partial Opposition to Motion for Order Charging Defendants' Partnership Interests of Jack Buster*; Plaintiffs' *Reply to Partial Opposition to Motion for Order Charging Defendants' Partnership Interests of Jack Buster.*

[57]*Notice of Appeal*, Docket 179.

[58]*Notice of Appeal*, Docket 180.

[59]*Stipulation*, Docket 247.

[60]*See Status Report and Request for Rulings*, Docket 254.

him following the Court's Judgment.[61]  As part of these efforts to collect, the Court

calendared a judgment debtor exam.[62]  The exam was stayed following Mr. Buster's

filing for bankruptcy but was eventually held on February 24, 1993.[63]   The

bankruptcy case was dismissed on December 18, 1992.[64]

On December 3, 1992, the Court entered an *Order* regarding attorney's

fees and costs.  The Court awarded the Plaintiffs $40,500.00 in legal fees and

$3,412.89 in costs.[65]

Plaintiffs feared Mr. Buster was transferring assets to his wife, Janice

Sue Buster a.k.a. Janice Sue Johnson and filed motions in order to ensure their

ability to properly collect from those assets as well.[66] Plaintiff filed an expanded

motion on February 19, 1993 asking to amend or supplement the pleadings.[67]  The

request referenced and incorporated the *Amended Motion to Implead* attached to the

Motion.  The Amended Motion included a request to implead the following parties:

---

[61]*Id.* at 4.

[62]*Id.* at 5.

[63]*Minutes: Judgment Debtor Examination of Jack Buster and Hearing on Plaintiff's Motion for Attorney Fees and Sanctions*, Docket 271.

[64]Docket 254, p. 7.

[65]Docket 249.  Following the entry of the Order regarding costs and fees, Defendant Terry Parks entered a *Stipulation Regarding Garnishment* as to his employer.  Docket 252.

[66]*Id.* at 6-7.

[67]*Motion to Amend or Supplement Pleadings* Docket 266.

1.       Janice Sue Buster, the wife of Defendant Jack B. Buster;
2.       Horizons West, Inc., an Oregon corporation wholly owned by Janice Sue Buster;
3.       David J. Berg;
4.       Marjorie A. Berg;
5.       Carl L. Casey, who Plaintiffs believe to be Defendant Jack B. Buster or Mr. Buster's alter ego;
6.       Scorpio, Inc., a corporation wholly owned by Defendant Jack. B. Buster at the time of the commencement of these proceedings; and
7.       An unidentified Trustee and Trust.[68]

On February 22, 1993, the Court granted Plaintiff's request to Amend the Pleadings.[69]

On February 19, 1993, following the issuance of the 1992 Judgment, the Plaintiffs filed an *Amended Complaint in Supplementary Proceeding* in order to enforce the judgment.[70]   The Amended Complaint for the supplementary proceedings names Jack B. Buster, Terry D. Parks, Northern Financial, Janice Sue Buster (a.k.a. Janice Sue Johnson), Horizons West, Inc., David J. Berg, Marjorie A. Berg, Carl L. Casey, Scorpio, Inc., and an unidentified Trustee and Trust as defendants.[71]   According to the Complaint, Plaintiffs believe that certain Defendants were transferring assets to other individuals and companies in order to avoid

---

[68]*Id.* at 3-4 (docketed as part of Docket 266, *Amended Motion to Implead*, p. 2).

[69]*Minute Order from Chambers*, Docket 268.

[70]Docket 270.

[71]*Id.*

execution on those assets to fulfill their obligations under the Final Judgement.[72]

After Mr. Buster's Bankruptcy was dismissed, the Court entered an *Amended Final Judgment* which contemplated the costs and fees for Mr. Buster.[73] A previous finding was made as to Mr. Parks and Northern Financial.[74] The Court awarded attorney's fees in the amount of $40,500.00 and costs in the amount of $3,412.89 to the Plaintiffs and against the Defendant Jack B. Buster. The Court further ordered that

> plaintiff shall recover from defendants Jack B. Buster, Terry D. Parks and Northern Financial, jointly and severally, the principal amount of $142,754.71 plus prejudgment interest from June 8, 1992 to August 17, 1992 in the amount of $1,334.19 attorneys in the amount of $40,500.00, and costs in the amount of $5,477.77, which comprises the August 17, 1992 award of $2,064.85 and the December 3, 1992 award of $3,412.89, for a total judgment of $190,057.64.[75]

Following the extensive motion practice to collect the Judgment, Plaintiff filed a *Motion for Award of Post-Judgment Attorneys' Fees and Costs*.[76] The Court issue an Order at Docket 297 in May of 1993 wherein Plaintiffs were awarded

---

[72]Docket 270, p. 3-6.

[73]*Amended Final Judgment*, Docket 282.

[74]Docket 249.

[75]Docket 282, p. 2.

[76]Docket 291.

$25,000.00 in post-judgment attorneys fees.[77]  Costs were directed to be awarded

once Plaintiff filed a cost bill with the Court.  In the same order, the Court addressed

the Mr. Buster's motion to approve a supersedeas bond for a stay and required that

a bond be posted in the amount of $165,000.00 in order to stay the outcome of the

case pending appeal.[78]  Mr. Buster sought this relief after the dismissal of his

Bankruptcy action.

       In July of 1993, Plaintiff moved the Court to again amend the

Complaint.[79]  Plaintiff stated they were now aware of the identity of the unnamed

Trustee and sought to add her, Susan Benedict, and the Western Investment Trust

to the Complaint.[80]  The Court granted the Motion on July 26, 1993[81] and the *Second

Amended Complaint* was filed at Docket 325.

       The *Second Amended Complaint* identifies the parties and their roles.

Plaintiffs also alleged that the Defendants engaged in fraudulent asset transfers in

order to avoid execution of the Judgment. Some of the facts (as alleged by the

Plaintiffs) help give clarity and context to the subsequent filings and are worth

---

[77] *Order*, p. 1.

[78] *Id.* at 2; *See Motion for Approval of Proposed Supersedeas Bond and for Stay of Execution* at Docket 280.

[79] *Motion for Second Amended Complaint*, Docket 320.

[80] *Id.* at 2; and *see Memorandum in Support of Motion for Second Amended Complaint*, at Docket 320.

[81] Docket 324.

recounting here.

       5.     Janice Sue Buster is the wife of Defendant Jack B. Buster.

       6.     Horizons West, Inc., is an Oregon corporation owned solely by Janice Sue Buster.

       7.     David J. Berg is a resident of the State of Washington.

       8.     Marjorie A. Berg is the wife of Defendant David J. Berg.

       9.     Upon information and belief, Carl L. Casey is Jack Buster or an alter ego of Mr. Buster.

       10.     Scorpio, Inc., is an Alaskan corporation which is wholly owned by one or more of the other Defendants.

       11.     Upon information and belief, the Western Investment Trust was established by Janice Sue Buster for the beneficial interest of her children.[82]

Following the filing of the *Second Amended Complaint*, Defendants filed a *Motion to Dismiss Plaintiffs' Second Amended Complaint* denying many of the Plaintiffs' allegations regarding fraudulent transfer and the Court's jurisdiction over the claims.[83]

Plaintiffs requested a preliminary injunction in order to protect the assets discussed in the *Second Amended Complaint*.[84]  The Court granted the request for

---

[82]Docket 325, p. 3.

[83]*Motion to Dismiss Plaintiffs' Second Amended Complaint Against Defendants Janice Sue Johnson AKA Janice Sue Buster, Horizons West, Inc., and Scorpio, Inc.*, Docket 328; *Memorandum in Support of Motion to Dismiss Plaintiffs' Second Amended Complaint Against Defendants Janice Sue Johnson AKA Janice Sue Buster, Horizons West, Inc., and Scorpio, Inc.*

[84]*See Minutes: Oral Argument on Preliminary Injunction*, Docket 332; and *see Preliminary Injunction*, Docket 334.

a preliminary injunction and entered the order on August 4, 1993.[85] Therein, the Court found that Mr. Buster "transferred or caused to be transferred virtually all of his assets to Mr. Buster's wife, Janice Sue Buster, or entities owned by Janice Sue Buster."[86] The Court also noted that some of the transferred assets were thought to have been transferred to the other entities or individuals named in the *Second Amended Complaint.*[87] The Court found that there was continued risk of transfers and fraud and the disposal of assets.[88]

Based on those facts, the Court ordered that the Defendants Mr. and Mrs. Buster (a.k.a. Janice Sue Johnson), Horizons West, Inc., Carl L. Casey, Scorpio, Inc., Western Investment Trust and Susan Benedict, Trustee for the Western Investment Trust and officers agents, servants, employees and attorneys, "are hereby forbidden from selling, transferring or in any manner disposing of any assets which Mr. Jack B. Buster or Scorpio, Inc. had an ownership interest in from February 29, 1989 forward which are not exempt from execution . . ."[89] The Busters were also precluded from attempting to enforce a *Separate Property Agreement* which could have given Ms. Buster authority over some of the described assets.

---

[85] *Preliminary Injunction*, Docket 334.

[86] *Id.* at 2.

[87] *Id.*

[88] *Id.* at 2-3.

[89] *Id.* at 3.

The *Injunction* also covered the "selling, transferring, or in any manner disposing of any real property, including the rents and profits produced by such real property . . ." as described in the *Injunction*.[90]

A similar order was entered within the *Injunction* as to interests in and proceeds from deeds of trust or trust notes for real property described in the *Injunction*.[91] And, the Court ordered that the share certificates for Scorpio, Inc., be delivered to the Court in order to determine whether Mr. Buster fraudulently transferred shares to his wife. The order for a $125,000.00 bond were reiterated with an extended deadline of August 9, 1993.[92]

Defendants objected to the *Preliminary Injunction* and Mr. Buster specifically stated that the Court could not force him to post the $125,000.00 bond.[93] Plaintiffs asked the Court for an order to show cause.[94] The Court granted that request and entered default "in plaintiffs' fraudulent conveyance action as to defendants Jack B. Buster, Janice Sue Buster, a/k/a Janice Sue Johnson, Horizons West, Inc., Scorpio, Inc, Western Investment Trust and Susan Benedict, Trustee of

---

[90]*Id.* at 4-5.

[91]*Id.* at 5-6.

[92]*Id.* at 6.

[93]*See Memorandum and Order*, Docket 363.

[94]*Expedited Motion for a Show Cause Order*, Docket 344.

the Western Investment Trust."[95]

In a continued attempt to allow the Plaintiffs to collect the Judgment, on August 9, 1993, the Court ordered that all of Jack Buster's general and or limited partnership interests in Westwood Acres, Kavik Mortgage Investors, and Kavik Kenai be "charged with payment of the judgment in this case."[96] The U.S. Marshals conducted a sale of property on September 2, 1993 for the same purpose.[97]

Defendants Janice Sue Buster (a.k.a. Janice Sue Johnson), Horizons West, Inc. and Scorpio, Inc., filed their Answer to the *Second Amended Complaint* on October 14, 1993.[98] Defendants Western Investment Trust and Susan Benedict filed their Answer the same day.[99] Jack Buster filed his Answer on November 1, 1993.[100]

Throughout 1993, the parties litigated Defendants' (Janice Sue

_____

[95]Docket 363, p. 4.

[96]*Order Charging Partnership Interests of Jack Buster*, Docket 340.

[97]*U.S. Marshals Return on Sale*, Docket 358; and *see Second Amended U.S. Marshals Return on Sale*, Docket 373.

[98]*Answer of Defendants Janice Sus Buster, a/k/a, Janice Sue Johnson, Horizons West, Inc., an Oregon Corporation, and Scorpio, Inc., an Alaskan Corporation, to Plaintiffs' Second Amended Complaint*, Docket 364.

[99]*Answer of Defendants Western Investment Trust and Susan Benedict, Trustee of the Western Investment Trust to Plaintiffs' Second Amended Complaint*, Docket 365.

[100]*Answer of Defendant Jack B. Buster to Second Amended Complaint*, Docket 370.

Johnson, Horizons West, Inc., and Scorpio, Inc.) Motion to Dismiss the Action.[101] On

October 15, 1993, the Court entered its *Memorandum and Order* on the Motion.[102]

The Court ruled that it did have proper jurisdiction in this matter and denied the

Motion.[103] On October 28, 1993, Defendants filed their notice of appeal of the

decision.[104]

In a similar move, Defendant Jack Buster filed a *Motion to Set Aside*

*Default and to Modify Preliminary Injunction and Subsequent Orders* on

November 1, 1993.[105] Plaintiffs filed their Opposition at Docket 382.[106] Mr. Buster's

Reply came at Docket 384.[107]

### D. Default Judgment

Plaintiffs moved the Court for Default Judgment as to Jack Buster,

Janice Sue Buster (a.k.a. Janice Sue Johnson), Horizons west, Inc., Carl L. Casey,

---

[101] *See* Docket 328.

[102] Docket 368.

[103] *Id.* at 3.

[104] *Notice of Appeal*, Docket 369.

[105] Docket 371.

[106] *Plaintiffs' Opposition to Jack B. Buster's October 29, 1993, Motion to Set Aside Default and to Modify Preliminary Injunction and Subsequent Orders.*

[107] *Reply Memorandum in Support of Motion to Set Aside Default and to Modify Preliminary Injunction and Subsequent Orders.*

Scorpio, Inc., Western Investment Trust, and Susan Benedict.[108] Due to the pending appeal of the motion to set aside the default filed by the Defendants, the Court stayed consideration of the Motion.[109]

On December 10, 1993, Plaintiffs moved the Court for the Defendants to turn over funds due to Kavik Valdez to the Court registry.[110] Defendants Opposed the Motion at Dockets 392 and 393.[111] Plaintiffs' Reply came at Docket 394.[112] The Court granted the Motion stating "[t]here is little doubt that as long as the money is in the court registry, as opposed to some other account, it will be secure for dissipation, or allegation of dissipation."[113] Defendants Janice Sue Buster (a.k.a. Janice Sue Johnson), Horizons West, Inc., and Scorpio, Inc., filed an appeal with the Ninth Circuit regarding the Order at Docket 395.[114]

The Court gave Plaintiffs leave to sell Jack Buster's general partnership

---

[108] *Application for Default Judgment*, Docket 387.

[109] *Minute Order from Chambers*, Docket 415 ("The application for default judgment, filed December 10, 1993 (Docket No. 371), is stayed pending appeal of motion to set aside default.").

[110] *Expedited Motion for Turnover of Funds*, Docket 388.

[111] *Defendant's Opposition to Plaintiff's Expedited Motion for Turnover of Funds*; *Opposition to Motion for Turn Over of Funds*.

[112] *Reply to Defendants' Opposition to Plaintiffs' Expedited Motion for Turnover of Funds*.

[113] *Order*, Docket 395.

[114] *Notice of Appeal*, Docket 403.

interest in Kavik Mortgage Investors in accordance with AS 09.35.100-170.[115] The

partnership was offered for sale at auction on March 9, 1994.[116] Following the sale,

the Court released the proceeds from the sale, $1,500.00, to the Plaintiffs'

attorneys.[117]

On May 26, 1994, Plaintiffs filed notice with the Court that the Ninth

Circuit had denied Defendants' appeal of the Court's Judgment.[118] Plaintiffs also

filed with the Court a request to lift the stay on Plaintiffs' request for default

judgment.[119] In the *Notification* regarding the Ninth Circuit decision, Plaintiffs noted

that there was currently $48,000.00 in the Court registry that could be used to

partially satisfy the judgment.[120]

The Court entered a *Memorandum and Order* dated June 1, 1994,

granting Plaintiffs' request to lift the stay and denying Defendants' request to set

aside the judgment resulting from the Court's entry of default as to the fraudulent

---

[115]*Supplemental Order Charging General Partnership Interest of Jack Buster in Kavik Mortgage Investors*, Docket 402.

[116]*Notice of Public Sale*, Docket 411.

[117]*Order Releasing Funds Received from the Sale of General Partnership Interest of Jack B. Buster*, Docket 416.

[118]*Notification of Decision*, Docket 422.

[119]*Motion to Lift Stay*, Docket 419.

[120]Docket 422, p. 2.

conveyance action (which was entered on September 29, 1993).[121]

Plaintiffs filed a *Notice of Submission of Revised Default Judgment* after discovering that the original submission failed to include Carl L. Casey.[122]

On June 15, 1994, Mr. Buster filed a *Motion for Contribution*, wherein he asserted that the Court should order "Ronald E. Greisen and Henry P. Head to pay at least 50 percent of the Judgment" in the case.[123] Mr. Buster's rationale was that

> [t]he losses which this court has adjudged to have occurred to the Thomas, Head and Greisen Employees Trust would not have occurred if Greisen and Head had not violated their duties as trustees. This court should require them, under 29 U.S.C. 1109, to make good to the Plan any losses resulting from their breaches of their fiduciary responsibilities.[124]

Mr. Buster concluded that Plaintiffs should be required to pay at least 50 percent of the total losses.[125] Accompanying the contribution motion was Mr. Buster's motion to stay the entry of default judgment until after the Court decided the contribution issue.[126]

---

[121]Docket 423.

[122]Docket 425.

[123]Docket 426.

[124]*Id.* at *Memorandum*, p. 3.

[125]*Id.*

[126]*Motion to Stay Entry of Default Judgment*, Docket 427.

Through the issuance of a Minute Order, the Court granted Mr. Buster's request for a stay. The motion for contribution at Docket 426 was also held in abeyance pending the Ninth Circuit's ruling on defendants' petition for rehearing en banc as to an earlier appeal.[127] On July 22, 1994, the Ninth Circuit denied the petition for rehearing and rejected the request for an en banc hearing.[128] And, on August 8, 1994, the Court denied Mr. Buster's motion for contribution.[129]

Default Judgment was entered against the following parties on August 8, 1994: "Jack B. Buster, Janice Sue Buster, a/k/a Janice Sue Johnson, Horizons West, Inc., Scorpio, Inc., Western Investment Trust and Susan Benedict, Trustee of the Western Investment Trust."[130] In a thorough Judgment, the Court made the following notable findings:

> the asset conveyances made by Jack B. Buster to Janice Sue Johnson a/k/a Janice Sue Buster since January 1, 1991 . . . were fraudulent conveyances . . . having been made between Jack [B.] Buster and Janice Sue Buster for inadequate consideration and with the intent to hinder, delay or defraud plaintiffs and other creditors of Jack B. Buster . . . [131]

---

[127] *Minute Order from Chambers*, Docket 433.

[128] *Notice of Ninth Circuit Court of Appeals' Denial of Petition for Rehearing and Rejection of Suggestion for Hearing en Banc*, Docket 434, Attachment, *Appeal from the United States District Court for the District of Alaska*, p. 2.

[129] *Order from Chambers*, Docket 435.

[130] *Default Judgment*, Docket 436, p. 2.

[131] *Id.*

that among the [fraudulent] asset conveyances is the conveyance of Scorpio, Inc.'s limited partnership interest in Kavik Valdez, a limited partnership . . .[132]

the January 4, 1992 assignment . . . by Jack B. Buster to Janice Sue Johnson a/k/a Janice Sue Buster, of Mr. Buster's right to receive all capital accounts and monies due, or to become due or owed in the form of debt owed by Kavik Valdez to Jack B. Buster, was a fraudulent conveyance . . . having been made between Jack B. Buster and Janice Sue Johnson for inadequate consideration and with the intent to hinder, delay or defraud plaintiffs and other creditors of Jack B. Buster . . .[133]

the September 13, 1991 assignment . . . by Jack B. Buster to Janice Sue Johnson a/k/a Janice Sue Buster, of Mr. Buster's right to receive all capital accounts and monies due, or to become due or owed in the form of debt owed by Scorpio, Inc. to Jack [B.] Buster, was a fraudulent conveyance . . . having been made between Jack B. Buster and Janice Sue Johnson for inadequate consideration and with the intent to hinder, delay or defraud plaintiffs and other creditors of Jack B. Buster . . .[134]

the January 4, 1992 assignment . . . by Jack B. Buster to Janice Sue Johnson a/k/a Janice Sue Buster, of Mr. Buster's right to receive all capital accounts and monies due, owed or to become due or owed in the form of debt owed by Westwood Acres to Jack B. Buster, was a fraudulent conveyance . . . having been made between Jack B. Buster and Janice Sue Johnson for inadequate consideration and with the intent to hinder, delay or defraud plaintiffs and other creditors of Jack B. Buster . . .[135]

---

[132] *Id.*

[133] *Id.* at 3.

[134] *Id.*

[135] *Id.* at 3-4.

that any monies owed by Westwood Acres to defendants should be turned over by Westwood Acres to the registry of this court . . . [136]

the conveyance evidenced by that certain Quit-Claim Deed executed by Jack B. Buster . . . purporting to convey real property located within the BODENBERG CREED SUBDIVISION . . . was a fraudulent conveyance . . . having been made between Jack B. Buster and Janice Sue Johnson for inadequate consideration and with the intent to hinder, delay or defraud plaintiffs and other creditors of Jack B. Buster . . . [137]

the BODENBERG CREEK SUBDIVISION property . . . is subject to the lien of the judgment entered in favor of plaintiffs [in this case] . . . [138]

the August 12, 1992 assignment . . . by Scorpio, Inc., to Horizons West, Inc., of the Deed of Trust and Deed of Trust Note secured by property known as ATS No. 674 . . . was a fraudulent conveyance . . . having been made between Scorpio, Inc. and Horizons West, Inc. for inadequate consideration and with the intent to hinder, delay or defraud plaintiffs and other creditors of Jack B. Buster . . . [139]

the Deed of Trust and Deed of Trust Note . . . is subject to the lien of the judgment entered in favor of plaintiffs [in this case] . . . [140]

the conveyance evidenced by that certain Quit-Claim Deed . . . executed by Scorpio[,] Inc. on August 24, 1992 and recorded on August 27, 1992 . . . purporting to convey Lots Ten (10) through Eighteen (18), Block One (1), and Lots Eleven (11) through Fifteen (15), Block Three (3) all within HIGHLAND SUBDIVISION . . .

---

[136] *Id.* at 4.

[137] *Id.*

[138] *Id.* at 5.

[139] *Id.*

[140] *Id.* at 5-6.

was a fraudulent conveyance . . . having been made between Scorpio, Inc. and Horizons West, Inc. for inadequate consideration and with the intent to hinder, delay or defraud plaintiffs and other creditors of Jack B. Buster . .    . [141]

the real property described [above as within the HIGHLAND SUBDIVISION]  is subject to the lien of the judgment entered in favor of plaintiffs [in this case] . . . [142]

that the conveyance evidenced by that certain Quit-Claim Deed executed by Scorpio, Inc. on August 24, 1992 . . . . purporting to convey Tract Three (3), BIG SKY SUBDIVISION, according to the official plat thereof . . . was a fraudulent conveyance . . . having been made between Scorpio, Inc. and Horizons West, Inc. for inadequate consideration and with the intent to hinder, delay or defraud plaintiffs and other creditors of Jack B. Buster . . . [143]

that the Big Sky Subdivision property . . . is subject to the lien of the judgment entered in favor of plaintiffs [in this case]  . . . [144]

the August 24, 1992 assignment . . . by Scorpio, Inc. to Horizons West, Inc., of the Deed of Trust and Deed of Trust Note which was secured by the property described as Lot Sixteen (16), Block Five (5), ROOSEVELT PARK SUBDIVISION . . . was a fraudulent conveyance . . . having been made between Scorpio, Inc. and Horizons West, Inc. for inadequate consideration and with the intent to hinder, delay or defraud plaintiffs and other creditors of Jack B. Buster . . . [145]

the Roosevelt Park Subdivision Deed of Trust and Deed of Trust Note are subject to the lien of the judgment

---

[141] *Id.* at 6.

[142] *Id.* at 6-7.

[143] *Id.* at 7.

[144] *Id.* at 7-8.

[145] *Id.* at 8.

entered in favor of plaintiffs [in this case] . . . [146]

the January 3, 1991 assignment . . . by Jack B. Buster to Scorpio, Inc., of Jack B. Buster's limited partnership interest in Westwood Acres, was a fraudulent conveyance . . . was a fraudulent conveyance . . . having been made between Jack B. Buster and Scorpio, Inc. for inadequate consideration and with the intent to hinder, delay or defraud plaintiffs and other creditors of Jack B. Buster . . . [147]

that the January 4, 1992 assignment . . . by Scorpio, Inc. to Horizons West, Inc. of Scorpio, Inc.'s limited partnership interest in Westwood Acres . . . was a fraudulent conveyance . . . having been made between Scorpio, Inc. and Horizons West, Inc. for inadequate consideration and with the intent to hinder, delay or defraud plaintiffs and other creditors of Jack B. Buster . . . [148]

Jack Buster's general and/or limited partnership interest in Westwood Acres be and the same hereby is charged with payment of the judgment in [this case] . . . Westwood Acres shall pay to the plaintiffs all present and future shares of all distributions, credits, draws, or payments which would have been paid to Jack Buster for his general and/or limited interest in Westwood acres, until the judgment in [this case] including interest, costs and attorneys' fees, is satisfied in full . . . [149]

defendant Buster's limited partnership in Westwood Acres may be sold . . . [with Plaintiffs having the right to be the purchaser and to make an offset bid] . . . [150]

the transfer of the stock of Scorpio, Inc. as to Janice Sue Buster, Horizons West, Inc., and/or Susan Benedict,

---

[146] *Id.*

[147] *Id.* at 9.

[148] *Id.*

[149] *Id.* at 9-10.

[150] *Id.* at 10.

Trustee, and the Western Investment Trust were fraudulent conveyances . . . having been made by Jack B. Buster, Janice Sue Buster, Horizons West, Inc. and/or Susan Benedict as [T]rustee for the Western Investment Fund for inadequate consideration and with the intent to hinder, delay or defraud plaintiffs and other creditors of Jack B. Buster . . . [151]

the share certificates of Scorpio, Inc. shall be immediately delivered to this court. If the share certificates are not received by this court within ten (10) days of the issuance of this judgment, the United States Marshal is authorized and directed to seize and deliver the share certificates to this court . . . [152]

the conveyance evidenced by that certain Quit-Claim Deed executed by Jack B. Buster on December 20, 1991 . . . purporting to convey Lot Twenty-seven (27), WOODSIDE EAST Unit No. 2 . . . was a fraudulent conveyance . . . having been made between Jack B. Buster and Scorpio, Inc. for inadequate consideration and with the intent to hinder, delay or defraud plaintiffs and other creditors of Jack B. Buster . . . [153]

Lot Twenty-seven (27) WOODSIDE EAST Unit No. 2 . . . is subject to the lien of the default judgment entered in favor of plaintiffs in [this case] . . . [154]

defendants shall within ten (10) days of the issuance of this judgment, turn over to the registry of this court the proceeds of any asset conveyances or transfers covered by this judgment . . . [155]

plaintiffs are entitled to execute on the assets covered by this judgment and have the assets applied

---

[151] *Id.*

[152] *Id.* at 10-11.

[153] *Id.* at 11.

[154] *Id.* at 11-12.

[155] *Id.* at 12.

toward the satisfaction of plaintiffs' judgment . . . [156]

> if the voiding of the transfers covered by this judgment is inadequate to compensate plaintiffs for damages caused by the fraudulent transfers, plaintiffs may request further proceedings necessary to establish the amount of recoverable damages . . . [157]

> plaintiffs recover from defendants Jack B. Buster, Janice Sue Buster a/k/a Janice Sue Johnson, Horizons West, Inc., Scorpio, Inc., Western Investment Trust and Susan Benedict, Trustee of the Western Investment Trust, attorneys' fees in the amount of $7500.00, and costs in the amount of $536.20, for a total of $8,036.20, together with interest on said total at the rate of 10.5% per annum from the date of this judgment until paid in full . . . [158]

Not surprisingly, On September 6, 1994, Defendants filed their notice of appeal of the Court's default judgment.[159]

Following the entry of default judgment, Plaintiffs requested the Court release the $48,000.00 in funds in the Court's registry deposited by Kavik Valdez.[160] And, Plaintiffs filed a *Motion for Award of Post-Judgment Costs*.[161] Defendant Jack Buster opposed the motion for costs[162] and filed his own motion seeking an

---

[156] *Id.*

[157] *Id.*

[158] *Id.* at 12-13.

[159] *Notice of Appeal*, Docket 442.

[160] *Request for Release of Funds Deposited with the Court by Kavik Valdez*, Docket 443.

[161] *Motion for Award of Post-Judgment Costs [29 U.S.C. § 1332 (g)(1)]*, Docket 445.

[162] *Memorandum in Opposition to Motion for Award of Post-Judgment Costs*, Docket 448.

accounting of the collections "and their application toward satisfaction of the Judgment."[163] Plaintiffs' Reply was filed at Docket 464.[164] The Court subsequently denied the motion for release of funds[165] and Plaintiff filed a motion for reconsideration.[166]

Through a motion and memorandum filed at Docket 452, Plaintiffs asked the Court for an order to show cause as to why several of the Defendants had failed to comply with the Court's entry of an order compelling them to produce certain documents.[167] Defendants filed a response in opposition at Docket 480.[168]

Noting the continued contentious behavior of the parties and the

---

[163] *Motion for Accounting*, Docket 447, p. 2.

[164] *Reply to Jack B. Buster's Opposition to Motion for Award of Post-Judgment Costs* (note: the lateness of the filing of the Reply was due to the Court staying further filings in its *Order* at Docket 453).

[165] *Order*, Docket 446.

[166] *Motion to Reconsider*, Docket 451.

[167] *Motion for Order to Show Cause Why Defendants Janice Sue Buster A/K/A Janice Sue Johnson; Horizons West, Inc.; Scorpio, Inc.; Western Investment Trust and Susan Benedict as Trustee of Western Investment Trust Should not be Held in Contempt for Failure to Comply with Order of August 8, 1994* and *Memorandum in Support of Motion for Order to Show Cause Why Defendants Janice Sue Buster A/K/A Janice Sue Johnson; Horizons West, Inc.; Scorpio, Inc.; Western Investment Trust and Susan Benedict as Trustee of Western Investment Trust Should not be Held in Contempt for Failure to Comply with Order of August 8, 1994*, Docket 452; *see Order from Chambers*, Docket 435 ("Plaintiffs' motion to compel is GRANTED. Defendants shall respond no later than August 22, 1994.").

[168] *Memorandum in Response and Opposition to Motion to Show Cause*, Docket 480.

frustration of the Court as this matter continued to drag on, the Court issued an Order on September 29, 1994, requiring the parties to confer and attempt to resolve all outlying issues in this matter. A status report as to the progress of that process was set to be due October 14, 1994.[169] Settlement conferences were held with the Court but no settlement could be reached.[170]

### E.    Accounting of Collections following the Entry of Default Judgment

After the failed settlement negotiations, Plaintiff filed a response to Mr. Buster's request for an accounting.[171] Plaintiff attached an accounting to the response. As of the date of the filing, it appeared that $59,090.20 total payments had been made to Plaintiffs with $50,096.20 being collected from Mr. Parks and only $9,000.00 from Mr. Buster.[172] As the accounting addressed Defendant's motion, the Court denied it as moot.[173]

Plaintiffs continued to believe the Defendants were hiding assets through fraud. Accordingly, Plaintiffs filed a *Motion for Turnover of Documents* in

---

[169] *Order*, Docket 453. It is notable that the Court found frustration with this case as early as 1994. It is nearly 20 years later and the parties have only now neared the resolution of this matter.

[170] *See Order from Chambers*, Docket 463.

[171] *Response to Defendants' Motion for Accounting*, Docket 466.

[172] *Id.* at *Information for Writ of Execution*, p. 2.

[173] *Order*, Docket 472.

November of 1994.[174]

The Court granted Plaintiffs' request for an award of post-judgment costs on November 16, 1994. This added an additional $12,292.95 to the August 17, 1992 Judgment.[175] This Order was closely followed by a motion for post-judgment attorneys' fees.[176] Mr. Buster opposed the motion.[177] And Plaintiffs filed their reply at Docket 483.[178]

Following the re-assignment of this matter to Judge Singleton, the Court issued an order addressing all pending motions in December of 1994.[179] First, the Court granted Plaintiffs' request to require Defendants to turn over documents Plaintiffs believed would establish fraud. Next, the Court granted Plaintiffs' request for attorneys fees at Docket 470, fees which Plaintiffs stated were accrued due to Mr. Buster's efforts to "hide assets and avoid paying the judgment against him."[180] Mr. Buster was ordered to pay an additional sum of $58,604.00 as "attorney's fees

---

[174]Docket 469.

[175]*Order*, Docket 467.

[176]*Motion for Award of Post-Judgment Attorneys' Fees*, Docket 470.

[177]*Memorandum in Opposition to Motion for Award of Post-Judgment Attorneys' Fees*, Docket 478; and *see Supplemental Memorandum in Opposition to Motion for Award of Post-Judgment Attorneys' Fees*, Docket 481.

[178]*Reply to Jack B. Buster's Opposition to Motion for Award of Post-Judgment Fees*, Docket 483.

[179]*Order from Chambers*, Docket 485.

[180]*Id.* at p. 1.

incurred in attempting to collect the judgment in this case."[181]  The Court also reconsidered the Order issued at Docket 472 regarding discovery requests and, on reconsideration, granted Plaintiff's discovery requests previously filed at Docket 465 and ordered Mr. Buster to "forthwith comply with all outstanding discovery orders to the extent that he has not done so."[182]  As to the motion for an order to show cause as to Janice Sue Buster (Docket Nos. 479 and 480), the Court gave Ms. Buster an additional 30 days to comply with the requested disclosures and production.[183]

In February of 1995, Defendant Buster moved the Court to vacate its order to compel production and compliance with all outstanding discovery orders.[184] Mr. Buster also filed a *Motion to Rescind Execution Sales.*[185]  Defendants Janice Sue Buster (a.k.a. Janice Sue Johnson), Horizons West, Inc., Scorpio, Inc., Western Investment Trust, and Susan Benedict, Trustee of the Western Investment Trust, filed a motion to vacate part of the Default Judgment arguing that the court should vacate the $7,500.00 attorney's fees and costs portion of the judgment.[186]  Plaintiffs filed their *Opposition to Defendants' Motion to Vacate Judgment* at Docket 498.

---

[181] *Id.*

[182] *Id.* at p. 2.

[183] *Id.*

[184] *Motion to Vacate Order to Compel*, Docket 492.

[185] Docket 493.

[186] *Motion to Vacate Portion of Default Judgment*, Docket 494

And, Defendants filed their Reply at Docket 511.[187]

Defendant Jack Buster filed a motion requesting the Court reconsider its decision to deny his previous motion to vacate an order to compel discovery and sought a protective order which would forbid Plaintiffs from "seeking further post trial discovery thereby illegally causing defendant annoyance, embarrassment, oppression and undue burden and expense."[188]  Plaintiffs filed their Opposition at Docket 523 and sought judicial review of Mr. Buster's filings prior to accepting the filings at Docket 522.[189]  The Court denied the motion for review of pleadings.[190]

Defendant's motion was followed soon thereafter by Plaintiffs' *Motion to Show Cause Why Jack B. Buster Should Not be Confined*.[191]  Therein Plaintiffs allege that Mr. Buster failed to comply with the Court's order for production at Docket 485.  Mr. Buster filed his Opposition at Docket 525 and Plaintiffs filed a Reply at Docket 528.[192]  Plaintiffs additionally filed an *Affidavit and Request for Issuance of*

---

[187] *Reply Memorandum on Motion to Vacate Portion of Default Judgment.*

[188] *Motion for Reconsideration and Protective Order*, Docket 515.

[189] *Memorandum in Opposition to Motion for Reconsideration and Protective Order and In Support of Motion for Judicial Review of Pleadings Prior to Filing; Motion for Judicial Review of Pleadings Prior to Filing by Buster.*

[190] *Minute Order from Chambers*, Docket 538.

[191] Docket 516.

[192] *Opposition to Motion for Confinement of Jack B. Buster*; *Reply to Opposition to Motion to Show Cause why Jack B. Buster Should Not be Confined.*

*Writ of Execution* against Mr. Buster.[193]

Meanwhile, Plaintiffs continued to seek the satisfaction of their judgment by filing a *Notice of Public Sale* regarding the Deed of Trust and Deed of Trust promissory note for the property described as "Lot Sixteen (16), Block Five (5), ROOSEVELT PARK SUBDIVISION . . . "[194]

At Docket 532, the Court denied Mr. Buster's motion for reconsideration and for a protective order (filed at Docket 515).[195]

F.    Appointment of Receiver

On May 1, 1995, Plaintiffs asked the Court to appointment Mr. Charles H. Rigden as receiver in this matter.[196]  The Court considered the Motion and found good cause to appoint a receiver.[197]  The court authorized Mr. Rigden to take certain actions which are necessary to:

> 1.    Investigate the status of Westwood Acres, including the extent of and amount of past distributions made by Westwood Acres to the defendants;
> 2.    Ascertain whether Westwood Acres, presently has or in the future will have money or other assets that are or will be due and owing to any of the defendants;

---

[193]Docket 517; and *see Errata to Affidavit and Request for Issuance of Writ of Execution*, Docket 519.

[194]Docket 524, p. 2

[195]*Order from Chambers*.

[196]*Motion for Appointment of Receiver*, Docket 530.

[197]*Order*, Docket 536.

3.    Freeze Westwood Acres bank account or accounts until this court, based on Mr. Rigden's report, determines what portion of the account funds are due and owing to defendants; and

4.    Freeze distribution by Westwood Acres of proceeds from the collection of promissory note payments to Westwood Acres, until this court, based on Mr. Rigden's report, is able to determine what portion of the note payments belong to defendants.

5.    Upon order of this court, have defendants' share of Westwood Acres past, present or future distributions turned over to the registry of this court.[198]

The Court went on to enter further orders that Mr. Rigden was authorized to have full access to Westwood Acres books and records; laid out the set compensation rate for Mr. Rigden and his staff; and ordered that invoices for payments should be filed with the court and when approved will be added to the costs of the August 8, 1994 default judgment.[199]

Following the appointment of Mr. Rigden, the Court entered an *Order to Appear* commanding Mr. Buster to appear at an evidentiary hearing to show cause "why he should not be held in civil contempt and sanctioned accordingly for failure to comply with this court's order dated December 22, 1994, in which Mr. Buster was ordered to turn over documents and comply with plaintiffs' discovery request."[200]

---

[198]*Id.* at 1-2.

[199]*Id.* at 2.

[200]Docket 39, p. 1-2.

Mr. Buster filed a *Notice of Intent to Comply With the Court's Order of December 22, 1995* [sic].[201] Therein Defendant sought additional time to locate the items sought.[202] Mr. Buster also filed a *Motion for Sanctions* against the Plaintiffs on the same day stating that Plaintiffs had acted fraudulently in their attempts to "wrest control of Westward Acres . . . from its duly appointed general partner" and had schemed to set matters on at times they knew Mr. Buster could not attend and used "the fact that Jack B. Buster does not have a telephone to prepare and file *motion for Expedited Consideration of Plaintiffs Motion for Appointment of Receiver* and to serve defendant Buster by U.S. Mail."[203] On the same day, Mr. Buster filed a motion for reconsideration of the Court's decision to appoint Mr. Rigden.[204]

### G.    Westwood Acre's Motion to Intervene

On May 18, 1995, Westwood Acres filed a *Motion to Intervene* in the case.[205] The Partnership stated that prior to the appointment of Mr. Rigden wherein he was given the power to freeze bank accounts and distributions, there had not been a need for the entity to intervene.[206] Also within the Motion was Westwood

---

[201]Docket 541.

[202]*Id.* at 2.

[203]Docket 542, pp. 1- 2.

[204]*Motion for Reconsideration*, Docket 543.

[205]Docket 546.

[206]*Id.* at *Memorandum in Support of Motion to Intervene*, p. 2.

Acre's request for the court to vacate or modify the order appointing Mr. Rigden.[207] The Court granted Westwood Acre's request to intervene on the record on May 30, 1995.[208]

On May 19, 1995, the Court held an evidentiary hearing on the Court's Order for Mr. Buster to show cause.[209] Therein, the Court denied Mr. Buster's request for an additional 30 days to comply with the Court's order of production. Instead, the Court gave Mr. Buster until May 26, 1995 to produce the documents or he would be held in contempt. The Court scheduled another hearing on May 26, 1995 to follow up on the matter.[210]

Plaintiffs filed another *Motion for Turnover of Funds* on May 23, 1995 requesting the Court order the defendants turn over "to the court registry by June 1, 1995, all distributions received from Westwood Acres" and that the Defendants be directed that if they fail to do so they will be required to show cause why they should not be confined until they comply.[211]

On May 25, the Court ordered that $1,196.00 (received from Alan

---

[207] *Id.* at 2; and *see* later motion filed on May 30, 1995, *Motion to Vacate or Modify Order*, Docket 556.

[208] *Minutes of the United States District Court, District of Alaska*, Docket 555.

[209] *Minutes of the United States District Court, District of Alaska*, Docket 548.

[210] *Id.*

[211] Docket 549, p. 2.

Carlson of Carlson Property Services and deposited with the Court registry), be turned over to the attorneys for the Plaintiffs.[212]

### H.    Counterclaim by Intervenor

Westwood Acres filed a Counterclaim after the Court permitted it to intervene in the case.[213]  Therein, Westwood Acres made the following allegations: that the Plaintiff intentionally interfered with the contractual relationships of the Intervenor by obtaining a receiver and that the receiver was given unlawful power over the Intervenor's assets; that the interference with the Intervenor's assets caused a breach of contracts with banks where Westwood Acres had accounts; that the interference caused a breach of the contract among the partners of the Intervenor by "intruding into the fiduciary relationship between the partners and rendering it impossible for Westwood Acres . . . to continue to conduct its business;" that the application for the appointment of a receiver who had the authority to freeze accounts and take actions against certain partnership property constituted harassment and was done so without proper notice to the Intervenor.[214]

Soon after Westwood Acre's filing of their Counterclaim, Plaintiff filed a *Notice of Public Sale* as to Mr. Buster's partnership interest in Westwood Acres.[215]

---

[212] *Order*, 553.

[213] *Intervenor's Counterclaim*, Docket 558.

[214] *Id.* at 2-3.

[215] Docket 560.

The next month, in June, Westwood Acres filed a motion with the Court seeking relief from the Court's Judgment.[216]

The Court granted Westwood Acres' request to modify the appointment of the receiver as to the portion of the appointment which authorized Mr. Rigden to "freeze Westwood Acres bank account or accounts and to freeze distribution by Westwood Acres of proceeds from the collection of promissory note payments to Westwood Acres."[217]

I.    Receiver Status Report: June 8, 1995

On June 8, 1995, Mr. Rigden filed his first status report as Receiver.[218] In his report he outlined multiple transactions whereby Defendants in this matter received money from Westwood Acres in violation of this Court's orders.  These payments include:

> 1.    1993 distributions to Western Investment Trust on June 11, 1993 and September 7, 1993 in the amounts of $23,000 and $17,250.
> 2.    1994 distributions to Western Investment Trust for $23,000 by way of a check written to Janice Sue Buster.
> 3.    1995 distributions made to all limited partners at a rate of $1,500 per unit.  This distribution gave $1,500 to the partner Necrason, $3,000 to the partner Jackson, and $34,000 to Janice Sue Johnson for her 23 units.
> 4.    A May 5, 1995 check written to A. Lee Petersen, attorney for Westwood Acres, which was stopped after the

---

[216] *Westwood Acres' Motion for Relief From Judgment*, Docket 567.

[217] *Order (Motion to Vacate or Modify May 9, 1995 Order)*, Docket 570, p. 5.

[218] Docket 575.

receiver put a freeze on the account.

5. A check dated February 5, 1995 for $30,000 written to Westwood Acres on the Panhandle State Bank account endorsed by Mr. Buster and appearing to be an inter-bank transfer to either the Western Bank in Oregon or to fund the 1995 distribution to Janice Sue Buster.[219]

Westwood Acres filed a motion to stop the sale of limited partnership interests in its entity.[220] On June 13, 1995, the Court denied Westwood Acres' previous motion for relief from Judgment.[221] Intervenor filed an appeal with the Ninth Circuit disputing the June 13 Order.[222] Plaintiffs appealed the Court's order at Docket 570 modifying the appointment of Mr. Rigden.[223]

J. Answer to Intervenor's Counterclaim and Counterclaim

Plaintiffs filed their *Answer to Intervenor's Counterclaim and Counterclaim Against Intervenor* at Docket 581 addressing Intervenor's allegations and laying out seven (7) affirmative defenses and seven (7) counterclaims. The Intervenors filed their Reply to the counterclaim on June 26, 1995.

On June 21, 1995, the U.S. Marshal entered their return on the sale of the limited partnership interest of Jack B. Buster in Westwood Acres.[224] The

---

[219]*Id.* at pp. 2-3.

[220]*Motion for Preliminary Injunction*, Docket 576.

[221]*Order from Chambers*, Docket 578.

[222]*Intervenor's Notice of Appeal*, Docket 580A.

[223]*Notice of Appeal*, Docket 580C.

[224]*U.S. Marshals Return on Sale*, Docket 585.

partnership interest sold for an offset bid of $2,500.00 to Plaintiff Henry P. Head.[225]

At Docket 588, Westwood Acres filed a *Motion to Reconsider* as to the Court's June 13, 1995 denying the Intervenor's motion for relief from Judgment.

On June 28, 1994, Plaintiffs made another request for the Court to release funds deposited with the registry pursuant to a Writ of Execution.[226]  This request concerned $5,200.00 received from the execution of the writ against Mr. Chung Kim.[227]  The Court authorized the release of these funds on July 24.[228]

In a thorough Order on pending motions, the Magistrate Judge addressed the *Motion for Turnover of Funds* (Docket 549), the *Motion for Sanctions* (Docket 542), the *Motion for Reconsideration* (Docket 543) and the *Motion for Clarification of Order* (Docket 572).[229]  The Court ruled that the Plaintiffs' motion directing Defendants to turn over distributions from Westwood Acres was ripe as to Jack B. Buster and granted the motion as to Mr. Buster.[230]  With respect to the *Motion for Sanctions* wherein Mr. Buster sought sanctions against the attorneys for Plaintiffs, the Court denied the motion and denied Plaintiffs' counter-motion for an

---

[225] *Id.* at 2.

[226] *Request for Release of Funds*, Docket 591.

[227] *Id.* at 2.

[228] *Order*, Docket 608.

[229] *Order*, Docket 597.

[230] *Id.* at 2.

award of fees and costs relating to responding to the motion.[231]   Regarding the motion for reconsideration of the Court's appointment of Mr. Rigden (filed by Mr. Buster), the Court denied the motion.[232]  The Court also denied Plaintiffs' motions at Dockets 572 and 573 stating that the Court had not ruled on the motions to turnover funds but had instead set responsive deadlines for Ms. Buster.[233]

At Docket 609 the Court ruled on the Plaintiffs' motion for the Defendants to turn over funds which were distributed by Westwood Acres.[234]  The Court ordered Defendants Janice Sue Johnson, Horizons West, Inc., Scorpio, Inc., Western Investment Trust and Susan Benedict, Trustee of the Western Investment Trust, to turn the funds in question over no later than fourteen (14) days from the date of the Order.[235]

Following the Court's denial of Westwood Acre's request for relief from Judgment, Westwood Acres filed an appeal with the Ninth Circuit.[236]  Intervenor then filed a motion for approval of a supersedeas bond in the amount of $3,000.00 in order to stay all further proceedings against the entity pending resolution of the

---

[231] *Id.*

[232] *Id.* at 2-3.

[233] *Id.* at 4.

[234] *Order*, Docket 609.

[235] *Id.* at 2.

[236] *See* Docket 580A.

appeal.[237]   Following consideration of the positions of the parties, including any opposition filed, the Magistrate Judge recommended that the Court enforce the suggestions of the Plaintiff as to collection of distributions in order to protect the Plaintiff during the pendency of the appeal.[238]   Following the submission of objections, the Magistrate Judge issued a Final Recommendation wherein he declined to modify his Initial Recommendation.[239]

The Court having granted Intervenor's request preclude the Receiver from freezing Westwood Acres' bank accounts, Plaintiffs filed a *Motion to Appoint Receiver* requesting the Court reinstate those powers.[240]   Plaintiffs argued that they would be irreparably harmed if the assets were not secured as Mr. Buster demonstrated a history of distributing assets against Court orders.[241]   On September 7, 1995, the Court granted Plaintiffs' request.[242]   The Court specifically appointed Mr. Rigden as a receiver who should assist Plaintiffs' in recovering

---

[237] *Motion for Approval of Supersedeas Bond*, Docket 605

[238] *Recommendation Regarding Setting Supersedes Bond and Stay*, Docket 617.

[239] *Final Recommendation Regarding Setting Supersedes Bond and Stay*, Docket 623.

[240] *Motion to Appoint Receiver in Thomas, Head & Greisen and Henry P. Head v. Westwood Acres, an Alaska Limited Partnership*, Docket 621.

[241] *See* Docket 621, *Affidavit of Thomas L. Hause*.

[242] *Order*, Docket 628.

Defendants' shares of Westwood Acres as established in the August 8, 1994 Default

Judgment.[243]  The Court further ordered that Mr. Rigden was authorized to:

> 1.      Investigate the status of Westwood Acres, including the extent of and amount of past distributions made by Westwood Acres to the defendants;
> 2.      Ascertain whether Westwood Acres, presently has or in the future will have money or other assets that are or will be due and owing to any of the defendants;
> 3.      Freeze Westwood Acres bank account or accounts until this court, based on Mr. Rigden's report, determines what portion of the account funds are due and owing to defendants; and
> 4.      Freeze distribution by Westwood Acres of proceeds from the collection of promissory note payments to Westwood Acres, until this court, based on Mr. Rigden's report, is able to determine what portion of the note payments belong to the defendants.
> 5.      Upon order of this court, have defendants' share of Westwood Acres past, present or future distributions turned over to the registry of the court.[244]

Mr. Rigden was further ordered to submit monthly reports to the court.

The Court also authorized Mr. Rigden to access the books and records of Westwood

Acres.[245]  A companion Order from Chambers was also issued at Docket 629.[246]

Westwood Acres filed their *Motion for Relief from Order* at Docket 632.  The Court

---

[243] *Id.* at 2.

[244] *Id.* at 2-3.

[245] *Id.* at 3.

[246] *Order From Chambers*.

denied the motion at Docket 696.[247]

On September 25, 1995, Plaintiffs filed another motion seeking the Court to enter an order for Defendants to show why they should not be confined for failure to comply with the Court's Order at Docket 609 (granting the motion to turnover funds).[248] The Court set an evidentiary hearing on the matter for November 6, 1995.[249] Defendants filed an opposition at Docket 636.[250] Following the evidentiary hearing, Plaintiffs submitted proposed findings of fact and conclusions of law at the Court's request.[251] The parties filed their objections to those proposed findings in turn.[252]

K.    Receiver Status Report: October 8, 1995

---

[247] *Order Regarding Motion for Relief.*

[248] *Motion to Show Cause Why Defendants Should not be Confined*, Docket 631.

[249] *Order Setting Evidentiary Hearing*, Docket 634.

[250] *Memorandum in Opposition to Motion for Contempt and Confinement*, Docket 636.

[251] *Proposed Findings of Fact and Conclusions of Law*, Docket 654.

[252] *See Opposition to Proposed Findings of Fact and Conclusions of Law and Cross Motion for Fees and Costs and Sanctions*, Docket 659; *Specific Objections to Plaintiffs' Proposed Findings of Fact and Conclusions of Law*, Docket 666; *Memorandum in Opposition to Plaintiffs' Proposed Findings and in Support of Defendants' Alternative Findings*, Docket 667; *Reply to Defendant Jack B. Buster's Opposition to Proposed Findings of Fact and Conclusions of Law and to Defendants' Janice Sue Buster, et al.'s Memorandum in Opposition to Plaintiffs' Proposed Findings of Fact and Opposition to Defendant Jack Buster's Cross-Motion for Fees and Costs and Sanctions*, Docket 672.

In his report to the Court, Mr. Rigden outlined his efforts to obtain information regarding assets which may be subject to the Court's Judgment.[253]  He also outlined his efforts to freeze accounts associated with the Defendants and their investments.[254]

L.    Receiver Status Report: November 8, 1995

In this report to the Court, Mr. Rigden outlined communications with banks holding accounts subject to judgment in this matter.  He indicated the account numbers and balances of those accounts.[255]

M.    Recommendation on Motion to Hold Defendants in Contempt

Following lengthy motion practice and an evidentiary hearing, the Magistrate Judge entered his Recommendation regarding Plaintiffs' motion to hold the Defendants in contempt.[256]  The Magistrate Judge recommended Janice Sue Buster and Jack Buster be held in contempt.[257]  Mr. Buster filed his Objections at

---

[253] *Report to Court*, Docket 633.

[254] *Id.*

[255] *Report to Court*, Docket 651.  Mr. Rigden also filed a Report at Docket 673, *Report to the Court*, on February 8, 1996, stating there had been no activity to report.

[256] *Recommendation Regarding Plaintiffs' Motion to Hld Defendants in Contempt*, Docket 674.

[257] *Id.*

Docket 675.[258]  Plaintiffs filed their Objections at Docket 676.[259]  And, Sue Johnson

filed her Objections at Docket 677.[260]  Upon consideration of the filings, the

Magistrate Judge issued Final Recommendations at Docket 680.[261]  The Magistrate

Judge declined to modify his recommendation.[262]

Upon consideration of the matter, Judge Singleton upheld the

Magistrate Judge's recommendation.[263]  The Court specifically ordered that Mr.

Buster and Ms. Johnson be sanctioned in accordance with the Order and that

Plaintiff submit a proposed order to that effect.[264]

Plaintiffs filed a memorandum in support of their proposed Judgment at

---

[258] *Objections to Recommendation Regarding Plaintiffs' Motion to Hold Defendants in Contempt.*

[259] *Plaintiffs' Objection to Recommendation Regarding Plaintiffs' Motion to Hold Defendants in Contempt Dated February 14, 1996.*

[260] *Objections to Magistrate's Recommendation Regarding Plaintiffs' Motion to Hold Defendants in Contempt.*  And, *see Plaintiffs' Response to Defendants' Objection to Magistrate's Recommendation Regarding Plaintiffs' Motion to Hold Defendants in Contempt*, Docket 678; *Supplement to Plaintiffs' Response to Defendants' Objections to Magistrate's Recommendation Regarding Plaintiffs' Motion to Hold Defendants in Contempt*, Docket 679.

[261] *Final Recommendation Regarding Plaintiffs' Motion to Hold Defendants in Contempt.*

[262] *Id.*

[263] *Order from Chambers*, Docket 681.

[264] *Id.* at 3.

Docket 383A.[265] Jack Buster filed his opposition at Docket 688.[266] Ms. Johnson filed her opposition at Docket 689 and Plaintiffs' filed their reply at Docket 691.[267]

The Court entered a *Judgment of Contempt* against Janice Sue Johnson in the amount of $63,250.00 and against the Defendants Jack B. Buster and Janice Sue Johnson, jointly, in the amount of $14,260.15.[268]

On March 27, 1997, Plaintiffs filed an emergency request with the Court seeking a restraining order against the Defendants David J. Berg and Marjorie A. Berg and seeking a hearing regarding the sale of real property.[269] The Court granted the request and set a hearing.[270] In relation to Plaintiffs' Motion, they filed a *Conditional Application for Modification of March 28, 1997 Restraining Order.*[271]

Soon thereafter, the Plaintiffs and the Bergs reached a settlement

---

[265] *Memorandum in Support of Proposed Judgment*.

[266] *Opposition to Plaintiffs' Proposed Judgment*.

[267] *Memorandum in Response and Opposition to Proposed Judgment of Default*; *Reply to Defendants' Oppositions to Plaintiffs' Proposed Judgment of Default*.

[268] Docket 692. Both Defendants appealed. *See Notice of Appeal*, Docket 693; *Notice of Appeal*, Docket 695.

[269] *Emergency Ex Parte Motion for Order Requiring Garnishee to Appear and for Restraining Order*, Docket 707.

[270] *Order Granting Plaintiffs' Emergency Ex Parte Request for Garnishee to Appear and for Restraining Order*, Docket 709.

[271] Docket 715.

agreement.[272]  The Court approved the settlement and vacated the restraining order.[273]

### N.    Satisfaction of Judgment Against Terry Parks

On April 10, 1996, Plaintiffs filed an acknowledgment of the satisfaction of their Judgment against Terry Parks.[274]  Plaintiffs also stated that all liens previously held were released.[275]

On September 1, 1998, Plaintiffs' filed a request for the Court to release $1,748.73 in funds within the Court's Registry.[276]  The Court granted the request at Docket 743.

### O.    Receiver Status Report: June 1, 1999

In June of 1999, Mr. Rigden reported on the activity of accounts and assets subject to Judgment in this matter.[277]  The Receiver reported that the final Westwood Acres lot sold in August of 1998.  He also reported that he had confirmed

---

[272] *Plaintiffs' Submission of Order Approving Settlement Agreement and Vacating Restraining Order*, Docket 737.

[273] *Order Approving Settlement Agreement and Vacating Restraining Order*, Docket 738.

[274] *Acknowledgment of Satisfaction of Judgment Under AS 09.30.300 as to Terry Parks*, Docket 711.

[275] *Id.* at 2.

[276] *Request for Release of Funds Deposited with the Court by Alaska Superior Court*, Docket 742.

[277] *Report to the Court*, Docket 747.

a total balance of the Westwood Acres account with Panhandle State Bank was approximately $5,800.00. He was never allowed to access information regarding the Western Bank account. The only other asset to report on were monies held by Gridley Excrio Service. Those monies were being held in a non-interest bearing accounting until the remaining escrow contracts were paid off.[278]

### P.    Motion to Turn Over Escrow Funds

On August 13, 1999, the Trust moved the Court to direct Westwood Acres and/or Gridley Escrow Service to turn over the greater of either 57.5% of the sum held by Gridley or $97,707.48.[279] The Court granted the Motion at Docket 749.[280] Mr. Buster filed his Opposition at Docket 751 (and his notice of appeal at Docket 752).[281]

Separate funds in the amount of $1,800.00 were released to the Plaintiffs from the Court's registry following a motion to the Court.[282] In April of 2009, Plaintiffs filed a similar *Motion for Disbursement of Funds*.[283] The request addressed $62,141.00 in funds currently held by Mr. Rigden representing funds from Westwood

---

[278] *Id.* at 1-2.

[279] *Motion to Turn Over Funds*, Docket 748.

[280] *Order*.

[281] *Reply to Motion to Turn Over Funds*; *Notice of Appeal*.

[282] *Order for Release of Funds*, Docket 761.

[283] *Motion to Turn Over Funds*, Docket 762.

Acres.[284]  The Motion was accompanied by a Memorandum at Docket 763.[285]

In an Order filed at Docket 765, the Court denied the Motion without prejudice stating that because the bulk of the file in this case was inaccessible, the Court did not have sufficient information to grant the motion.[286]  Counsel was directed to file subsequent motions with supporting documentation.[287]

## II.    Recent Factual History

On March 30, 2012, Plaintiffs filed the current pending *Motion for Order Authorizing Distribution of Westwood Acres Fund to the Partners of Westwood Acres.*[288]  Plaintiffs requested the Court "approve Mr. Rigden's proposed payments to plaintiffs and the limited partners of Westwood Acres."[289]  Plaintiffs filed twelve (12) supporting documents with the Motion.[290]  A supporting *Memorandum* was also filed.[291]

Following years of history recounted above, Mr. Rigden suggested that

---

[284] *Id.* at 2.

[285] *Memorandum in Support of Motion to Turn Over Funds.*

[286] *Order*, Docket 765.

[287] *Id.* at 2.

[288] Docket 768.

[289] *Id.* at 2.

[290] *See* Docket 768-1 through 768-12.

[291] *Memorandum in Support of Motion for Order Authorizing Distribution of Westwood Acres Funds to the Partners of Westwood Acres*, Docket 769.

the final payments in this matter be distributed. Specifically, Plaintiffs suggested that "Mr. Rigden oversee final partnership payments to all of the limited partners of Westwood Acre[s] as well as the final payment owing to Plaintiffs in the amount of $62,595 plus final accounting adjustment . . . ."[292] Plaintiffs also asked the Court to compensate Mr. Rigden in the following manner:

> 1) After the Westwood Acres partners' capital accounts are charged, in proportion to their partnership capital account percentages, for Mr. Rigden's fees and costs not to exceed $12,000, Mr. Rigden is authorized to make the payments outlined in Mr. Rigden's August 31, 2011 report. Any payments to the Western Investment Trust shall be paid to Matthews & Zahare, P.C. in trust for Ronald Greisen and Henry P. Head. Any additional interest earned since August 31, 2011 shall be distributed proportionally based on the partnership account percentages; 2) Mr. Rigden shall send the payments via certified mail return receipt requested; and 3) Mr. Ridged shall report to this court the results of Mr. Rigden's efforts on or before July 6, 2012.[293]

Plaintiffs filed their Amended Certificate of Service at Dockets 770 and 773. Amended Memoranda were filed at Dockets 771, 772 and 774.[294] Judge Singleton referred the Motion to the Magistrate Judge at Docket 777.[295]

No oppositions or responses were filed by any of the parties in this

---

[292] *Id.* at 3; *citing* Exhibit A, Docket 769-1, p. 4.

[293] *Id.* at 4-5 (citations omitted).

[294] *Memorandum in Support of Motion for Order Authorizing Distribution of Westwood Acres Funds to the Partners of Westwood Acres.*

[295] *Order.*

matter.

III.     Analysis

A.   Service

Federal Rule of Civil Procedure 5 governs service.   Rule 5(a)(D) requires the service of written motions.   Rule 5(b) allows for service on a party's attorney (5(b)(1)), by mail (5(b)(2)(C)) or by sending it through electronic means if consent is obtained by the party (5(b)(2)(E)).   Rule 5(b) also contemplates electronic service through the use of court facilities if allowed under local rules (5(b)(3)).

District of Alaska Local Civil Rule 5.1 requires parties to file proof of service with the Court, including the either the recipient's acknowledgment of service or certification by the person making service.[296]   Proof of service can be made through the document served.[297]

An amended certificate of service was filed at Docket 773 stating that a copy of the Motion at Docket 768 and Memorandum at 769 and the proposed order were served on April 2, 2012 by U.S. Mail to Jack Buster and Marshall Coryell. ECF copies were delivered to A. Lee Peterson. A review of the Court's records indicates that Defendant Jack Buster is proceeding *pro se.*  Defendants Northern Financial, David Berg, Marjorie Berg and Intervenor Westwood Acres are represented by A. Lee Peterson.  Janice Sue Buster, Horizons West, Inc., Scorpio,

---

[296]D.Ak. L.R. 5.1(a)(1) - (2).

[297]D.Ak. L.R. 5.1(a)(3).

Inc., and Susan Benedict are represented by Marshall K. Coryell. A satisfaction of judgment has been filed as to Terry D. Parks.[298] Carl L. Casey is believed to be Mr. Buster's alter ego. Susan Benedict is the Trustee of Western Investment Trust. Service upon a trustee is proper "[i]n an action against a business trust or its trustees . . . ."[299]

It appears service in this matter was properly made.

B.    Discharge of Receiver

A court may discharge an appointed receiver "at any stage of the proceedings."[300] Further, "[a] court should not continue a receiver in assignment if the receiver's services are no longer needed."[301] Once the reason for the receivership has ceased to exist, the court should discharge the receiver.

In this matter, the Court appointed Mr. Rigden in order to oversee the execution of the judgment and to investigate and oversee the actions of the Defendants, some of whom were suspected to have fraudulently conveyed assets subject to execution. Mr. Rigden, in his August 31, 2011 Report (filed at Docket 768-1), stated that he was appointed to "assist in the recovery of defendants' share of Westwood Acres - An Alaskan Ltd. Partnership, distributions and other assets, which

---

[298] *See* Docket 711.

[299] 13 Am. Jur. 2d Business Trusts § 97.

[300] 64 Am. Jur. 2d Receivers § 145.

[301] *Id.*

are subject to the August 8, 1994 default judgment entered in favor of plaintiff.'[302] Mr. Rigden identified that his first duty was to identify and establish control over the assets of Westwood Acres.[303] Mr. Rigden's August 2011 report outlines his efforts to carry out the directive of the Court over the past seventeen (17) years.

Mr. Rigden reported that all of the Westwood Acres escrows "had been collected and that the escrow company was closing down."[304] The money held from the last asset of Westwood Acres was under his control and a check for the balance was deposited into a bank account which Mr. Rigden maintained. As the final asset is under Mr. Rigden's control and considering that Mr. Rigden is wrapping up his accounting practice, he believes his duty to the Court as receiver is complete.[305]

Having reviewed all of the pleadings in this matter including the duties assigned to the Receiver and his reports to the Court, the Magistrate Judge **recommends the Court discharge Mr. Rigden from his duties as Receiver and disburse the funds held by the Receiver in manner recommended by Mr. Rigden and the Plaintiff** in the Proposed Order at Docket 768-13

C.    Apportioning Costs and Fees Relating to Receiver

Mr. Rigden suggests that because Plaintiffs and all of the partners of

---

[302]Docket 768-1, p. 1.

[303]*Id.*

[304]*Id.* at 2.

[305]*Id.*

Westwood Acres benefitted from his appointment all parties should share in the cost and compensation due to him. He outlines his specific suggestion as to the apportionment and process in his August 2011 Report.[306] While not directly on point, the Alaska Rules of Civil Procedure allow for apportionment of attorney's fees awarded to plaintiffs.[307] Mr. Rigden's request accomplishes an equitable distribution of the costs and fees related to his service as Receiver. No doubt, the Plaintiffs and the partners of Westwood Acres benefitted from his service and the **Magistrate Judge recommends the Court apportion Mr. Rigden's costs and fees in the manner recommended by the Plaintiffs in their proposed order at Docket 768-13 and in Mr. Rigden's August 2011 Report at Docket 768-1**.

## IV.     Conclusion

This matter has taken the time of the parties and the Court for twenty three (23) years. Following decades of work to execute on the assets of the parties in order to satisfy the Judgment, the Receiver in this manner is ready to conclude his duties. The Magistrate Judge thanks Mr. Rigden for his service and years of hard work. At this time, pursuant to Plaintiffs' requests, the **Magistrate Judge hereby recommends the Court grant Plaintiffs' Motion, discharge Mr. Rigden from his duties as Receiver, disburse the funds held by the Receiver in manner**

---

[306]*See* Docket 768-1, p. 2.

[307]Alaska Rule of Civil Procedure 82(e) **Equitable Apportionment Under AS 09.17.080**.

**recommended by Mr. Rigden and the Plaintiff and apportion Mr. Rigden's costs and fees in the manner recommended by the Plaintiffs in their proposed order and by the Receiver in Mr. Rigden's August 2011 Report**.

**IT IS SO RECOMMENDED**.

In the interest of justice, and in order to expedite the business of the court, this Recommendations shall be deemed a Final Recommendation. This matter shall now be forwarded to the assigned District Court Judge.

DATED this 28th day of January, 2013, at Anchorage, Alaska.


*/s/ John D. Roberts*
JOHN D. ROBERTS
United States Magistrate Judge